NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALBERT BOUFARAH,<br><br>Defendant. | Civil Action No. 22-4476 (RK) (RLS)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff United States of America's ("Plaintiff" or the "United States") Motion for Summary Judgment seeking unpaid federal income taxes from Defendant Albert Boufarah ("Defendant"). (ECF No. 32, the "Motion".) Defendant filed a Response (ECF No. 33) to the Motion and Plaintiff filed a Reply (ECF No. 38). In addition to the parties' briefing, the Court has considered Plaintiff's Statement of Undisputed Facts (ECF No. 32-2, "P-SOF") as well as Defendant's Responsive Statement of Facts (ECF No 33-1, "D-RSOF"), and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff United States's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

It is not lost on the Court the irony of Defendant's contrived objections to the issuance of summary judgment as to his unpaid tax liabilities after failing, for several years, to make any meaningful payments to honor his obligations, not only, to pay taxes in the first instance, but also pursuant to the installment agreement accommodations. Even after being afforded an opportunity

to pay off his tax liabilities over time through these installment agreements, Defendant failed to comply with them. In all, it appears that Defendant even failed to comply with the series of installment agreements beyond a few *de minimis* payments.

Plaintiff's three-page Complaint seeks unpaid federal income taxes assessed against Defendant for five tax years. (*See* ECF No. 1 at 1.) As of June 20, 2022, Defendant Albert Boufarah owed $769,728.30 in unpaid federal income taxes for tax years 2009 through 2013, inclusive of applicable interest and penalties. (*Id.* ¶¶ 5–6, 9.)

The amount owed is derived from Defendant's federal income tax returns reporting a tax liability for the same five years, (P-SOF ¶ 7; D-RSOF ¶ 7) and, based on those returns, a delegate of the Secretary of the Treasury made the following tax assessments against him, (*see* ECF No. 32-12 at 1–10):

| Type of Tax | Tax Year | Assessment Date | Assessment Amount | Amount Owed[1] |
|---|---|---|---|---|
| Income | 2009 | 11/22/2010 | $194,690 | $115,752 |
| Income | 2010 | 11/21/2011 | $124,193 | $89,209 |
| Income | 2011 | 08/27/2012 | $93,921 | $59,325 |
| Income | 2012 | 08/05/2013 | $148,393 | $122,035 |
| Income | 2013 | 06/02/2014 | $46,608 | $43,282 |

(ECF No. 32-12 at 1–10; *see also* P-SOF ¶¶ 9–13; *see also* D-RSOF ¶¶ 9–13.)

According to Internal Revenue Service ("IRS") Revenue Officer Rebecca Troichuk ("Troichuk") and account transcripts indicating "Notice issued CP 0014," the IRS sent notices and demands for payments of the assessments to Defendant. (First Decl. Troichuk[2] ¶ 16; *see* ECF No. 32-6 at 2, 13, 23, 32, 41; *see also* P-SOF ¶ 16.)

---

[1] The Amount Owed (*e.g.*, ECF No. 32-12 at 9–10 (Form 1040) at line 76) is calculated by taking the Total Tax (*id.* at line 60) for the relevant tax year and adjusting it down by the income tax already withheld (*id.* at line 61) and then adjusting it up by the underpayment penalty (*id.* at line 77).

[2] The First Declaration of Rebecca Troichuk, dated June 7, 2024, (the "First Decl. Troichuk") is filed at ECF No. 32-4.

IRS records indicate Defendant entered into four installment agreements to pay off his tax liability: the 2010 Installment Agreement, 2012 Installment Agreement, 2017 Installment Agreement, and 2020 Installment Agreement. (*See* P-SOF ¶¶ 36, 41; *see also* D-RSOF ¶¶ 36, 41; *see also* First Decl. Troichuk ¶¶ 25–35.) While Defendant does not dispute the existence of these agreements, his recollection and records of the same are limited. (P-SOF ¶¶ 21–26; *see also* D-RSOF ¶¶ 21–26.) The IRS records indicate the 2010 Installment Agreement, which was for an undisclosed amount, began on December 18, 2010 and terminated on January 17, 2011. (First Decl. Troichuk ¶¶ 25–28 (citing ECF No. 32-6 at 2).) The 2012 Installment Agreement was established on February 19, 2014 as a $7,000 per month payment plan and terminated on October 6, 2014. (*Id.* ¶¶ 29–35 (citing ECF Nos. 32-6 at 2, 32-9 at 63).) The 2017 Installment Agreement, for $5,000 per month, lasted from March 9, 2017 until May 4, 2020. (*Id.* ¶¶ 36–40 (citing ECF Nos. 32-6 at 3, 32-9 at 131).) The final installment agreement, the 2020 Installment Agreement, which ran from September 14, 2020 until September 13, 2021, was for an undisclosed amount. (*Id.* ¶¶ 41–43 (citing ECF No. 32-9 at 160–66); Second Decl. Troichuk[3] ¶¶ 10–12 (citing ECF No. 32-8 at 9, 12).)

According to Plaintiff's records, Defendant or someone working on his behalf (denoted by "POA," i.e., power of attorney, in the records) called and requested a new installment agreement following the termination of the 2020 Installment Agreement in the latter half of 2021. (*See* ECF No. 38 at 6–7; *see also* ECF No. 38-3 at 9.) On October 14, 2021, an IRS Revenue Agent liaising with Defendant requested certain documentation by November 30, 2021 or else "levy procedures" would begin. (ECF No. 38-3 at 9–10.) In further correspondence between the parties, the deadline

---

[3] The Second Declaration of Rebecca Troichuk, dated July 29, 2024, (the "Second Decl. Troichuk") is filed at ECF No. 38-1.

for Defendant to produce documentation was extended to December 15, 2021, (*id.* at 14), and again to January 17, 2022, (*id.* at 16). Even after receiving a second extension, Defendant notified the IRS that he would need until February 23, 2022 to "secure funds from family members to make lump sum payment[s] to begin [the installment agreement]." (*Id.* at 17.) Further attempts were made to finalize an installment agreement with Defendant, but no agreement was ever reached. (*Id.* at 17–20.)

On July 8, 2022, Plaintiff United States brought this action against Defendant for the total unpaid balance of his tax liability and other applicable interest and penalties. (ECF No. 1.) Interest has been accruing against Defendant pursuant to 26 U.S.C. § 6601, at a rate set forth in 26 U.S.C. § 6621(b). (First Decl. Troichuk ¶ 18.) Further, due to Defendant's failure to timely file his tax returns and pay his income taxes, the IRS has assessed penalties against him under 26 U.S.C. §§ 6651 and 6654. (*Id.* ¶ 19.) In all, Defendant is indebted to the United States as set forth below:

| Tax Year | Balances as of June 20, 2022[4] | Balances as of June 10, 2024[5] |
|---|---|---|
| 2009 | $199,176.60 | $228,361.73 |
| 2010 | $162,194.54 | $185,960.73 |
| 2011 | $104,945.82 | $120,323.42 |
| 2012 | $233,194.64 | $267,418.73 |
| 2013 | $70,216.70 | $80,546.24 |
| **Totals** | $769,728.30 | $882,610.85 |

On June 10, 2024, the United States moved for summary judgment against Defendant for unpaid taxes for the years 2009, 2010, 2011, 2012, and 2013. (ECF No. 32-1 at 1.) Three weeks later, Defendant filed an Opposition to the United States's Motion for Summary Judgment. (ECF

---

[4] Amounts provided in the Complaint and include penalties and interest as assessed according to law. (*See* ECF No. 1 ¶ 5.)

[5] Amounts provided in Troichuk's Declaration of Debt and include penalties and interest as assessed according to law. (*See* ECF No. 32-5 ¶ 7.)

No. 33.) Thirty days later, and after an extension, the United States filed a Reply to Defendant's Opposition. (ECF No. 38.)

The Court grants the United States's Motion for Summary Judgment because the Complaint was timely under 26 U.S.C. § 6331 and non-prejudicial clerical errors in Plaintiff's records did not create a *genuine* issue of material fact foreclosing summary judgment.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment" is brought. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The party moving for summary judgment has the initial burden of establishing its right to summary judgment, i.e., establish a *prima facie* case. *See Celotex Corp.*, 477 U.S. at 323. Once the movant meets its threshold burden under Rule 56, the nonmoving party must present evidence to establish a *genuine* issue as to a *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (citation omitted). Whether a dispute of material fact is genuine turns on whether "a reasonable jury could return a verdict for the nonmoving party." *Spivack v. City of Philadelphia*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citation omitted).

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; rather, all reasonable inferences and doubts should be resolved in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). But a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Saldana v.*

*Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"). "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023). The nonmoving party must point to "concrete evidence in the record"—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) ("[S]peculation and conjecture may not defeat a motion for summary judgment." (citation omitted)). Such evidence must be admissible at trial although it need not be in admissible form at the time of summary judgment. *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record that no reasonable jury" could believe them. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such cases, summary judgment is still appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### III. DISCUSSION

#### A. PLAINTIFF'S PRESUMPTION OF CORRECTNESS

Plaintiff United States is entitled to summary judgment because it has established a *prima facie* case of unpaid tax liability for the 2009, 2010, 2011, 2012 and 2013 tax years which was unrebutted by Defendant. (ECF No. 32-1 at 2–3.) The IRS's "assessment," a determination of taxes owed, is entitled to the "legal presumption of correctness," which establishes Plaintiff's *prima facie* case. *See United States v. Taylor*, 757 F. App'x 194, 196–97 (3d Cir. 2018) (citing *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002)). To overcome this presumption, the taxpayer must show by a preponderance of the evidence that an assessment is incorrect. *Sullivan*

*v. United States*, 618 F.2d 1001, 1008 (3d Cir. 1980); *Samango v. United States*, 833 F. App'x 941, 945 (3d Cir. 2020). Defendant has failed to do so here.

As of June 10, 2024, Defendant owed $882,610.85 in unpaid taxes, including interest and statutory additions.[6] (ECF No. 32-5 ¶ 7.) The amount is derived from IRS transcripts maintained in the regular course of IRS business, (P-SOF ¶ 1), for years 2009 (ECF No. 32-6 at 1–3), 2010 (*id.* at 4–6), 2011 (*id.* at 7–9), 2012 (*id.* at 10–12), and 2013 (*id.* at 13–15). The assessments are also captured in the IRS's Form 4340s, titled "certificate of assessment, payments, and other specified matters." (*E.g.,* ECF No. 32-7 at 1–33.) Here, Plaintiff's transcripts, Form 4340s, and other records supporting the tax assessment are presumed correct and establish a *prima facie* case of liability against Defendant. *United States v. Brookman,* No. 08-5593, 2010 WL 1379808, at *2 (D.N.J. Mar. 29, 2010) (citing *Freck v. Internal Revenue Services*, 37 F.3d 986, 991–92 n. 8 (3d Cir. 1994)); *see also United States v. Meehan*, 530 F. App'x 155, 157 (3d Cir. 2013) ("[I]nformation in a Form 4340 is generally considered to be presumptively correct."). Accordingly, the burden now shifts to Defendant to present evidence that the assessments are incorrect or are otherwise uncollectible.

### B. DEFENDANT'S BURDEN

Defendant argues that he successfully rebutted Plaintiff's presumption of correctness and summary judgment cannot be granted for three principal reasons. *First*, 26 U.S.C. § 6331 bars this suit as premature in restricting the government's ability to collect unpaid taxes during an installment agreement or 30 days immediately following the termination of the same. (ECF No. 33 at 1–2.) *Second*, errors in Plaintiff's records indicate the records lack trustworthiness under

---

[6] Statutory additions and interest were calculated according to by 26 U.S.C. §§ 6621 and 6622. (ECF 32-5 ¶ 8.)

Federal Rule of Evidence ("Rule") 803(6)(E). (ECF No. 33 at 3–5.) *Third*, Plaintiff's records are inadmissible under the business records exception to the rule against hearsay under Rule 803(6)(A) as the records were not "made at or near the time [of the event] by—or from information transmitted by—someone with knowledge." (*Id.* at 5–6.)

### 1.  26 § 6331

Defendant alleges "this action was filed in violation of the three interrelated [26] § 6331 Code sections [6331 (i)(4)(A), (k)(2)-(3)] identified in *Schiller* which prohibit an action from being commenced during the pendency of an installment agreement." (ECF No. 33 at 5 (citing *United States v. Schiller*, 81 F.4th 64, 68 (2d Cir. 2023)).) To support this argument, Defendant points to the Form 4340, which purports to show the latest installment agreement was terminated on July 18, 2022—ten days after this action commenced. (*Id.* at 2.) Plaintiff acknowledges the July 18, 2022 termination date as a "systematic error . . . reversed by a subsequent entry" and explains the proper termination date was September 13, 2021. (ECF No. 38 at 5–6.)

Under 26 U.S.C. § 6331(k)(2), "[c]ertain events, [] prevent the Government from collecting . . . taxes and toll the statute of limitations, including a pending installment agreement request." *United States v. Master Fire Prot., Inc.*, No. 16-8755, 2018 WL 4378158, at *2 (D.N.J. Aug. 6, 2018) (citing 26 U.S.C. § 6331(k)(2)). This section "prohibits the issuance of any levy while a proposed installment agreement is pending," *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 112 (3d Cir. 2017), and the commencement of a lawsuit within 30 days of the termination of an installment agreement, 26 U.S.C. § 6331(k)(2)(D), and when an installment agreement is in effect, *id* § 6331(k)(2)(C).

Defendant, relying on the Form 4340's July 18, 2022 termination date of the 2020 Installment Agreement, alleges Plaintiff brought this suit on July 8, 2022, "during the pendency of an installment agreement" in violation of § 6331(k). (ECF No. 33 at 2.) Plaintiff does not dispute

8

the statute's restraint on bringing suits in certain situations relating to installment agreements, (ECF No. 32-1 at 4–5); rather, Plaintiff maintains that the termination date was instead September 13, 2021 (rather than July 18, 2022) and Defendant "Boufarah knew that his 2020 Installment Agreement was terminated" prior to July 18, 2022. (*Id.* at 6–7.) Therefore, the parties' only dispute is over the *true* termination date of the 2020 Installment Agreement.

In reviewing the material facts, and the evidence supporting the same, it is clear that the July 18, 2022 termination date is a system error and not the proper termination date of the 2020 Installment Agreement, as reflected in other IRS records. Therefore, the commencement of this suit does not run afoul of § 6331. As discussed, the Form 4340's assessment is given the presumption of correctness. Ironically, however, it is Defendant who is relying on the correctness of the Form 4340 for its July 18, 2022 termination date. (ECF No. 33 at 2.) Plaintiff, in arguing July 18, 2022 is not the correct termination date, points to (i) the Second Troichuk Declaration; (ii) evidence in the IRS's transcripts that a Notice CP 523[7] was mailed to Defendant during the week of June 14, 2021; (iii) cessation of installment payments by Defendant; and (iv) Defendant's request for a new installment agreement. (ECF No. 38 at 6–8; Second Decl. Troichuk ¶¶ 7–16.)

The extensive support put forth by Plaintiff, (*see* ECF No. 38 at 5), indicates that no reasonable jury could find that July 18, 2022 was the termination date of the 2020 Installment Agreement. *See, e.g., Snead v. Casino*, 700 F. Supp. 3d 203, 213 (D.N.J. 2023) ("[S]ummary

---

[7] As explained by Troichuk, (First Decl. Troichuk ¶¶ 44), a CP 523 entry indicates that a default notice was issued to Defendant, which provides him with notice that he is not in compliance with the terms of the installment agreement and risks it being terminated. *See United States v. Chelsea Brewing Co., LLC*, No. 12-1544, 2014 WL 3605518, at *2, *7 (S.D.N.Y. July 18, 2014), *reconsideration granted on other grounds*, No. 12-1544, 2014 WL 4801330 (S.D.N.Y. Sept. 26, 2014) (finding "presence of the code 'CP 523' in [the IRS] records" is sufficient evidence to "indicate[] that the IRS issued notices of termination for each of the three installment agreements" even where "the Government has not provided copies of any notice letters that were actually sent") If a notice is not addressed within 90 days, "the agreement is deemed terminated by law." (Second Decl. Troichuk ¶¶ 7–11.)

judgment is still appropriate 'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587)). The records, elucidated by Troichuk's Second Declaration and deposition testimony, make clear that Defendant and his agent corresponded with Plaintiff in an "attempt[] to negotiate a new installment agreement" prior to July 18, 2022. (ECF No. 38 at 7; Second Decl. Troichuk ¶¶ 14–15; ECF No. 33-4 at 22:17–23:1.) Defendants' contention that there was, in place, an active installment agreement until July 18, 2022 is nothing more than a contrivance. (Second Decl. Troichuk ¶¶ 14–15.) Moreover, Defendant fails to identify anything in the record indicating that the Form 4340's listed termination date of July 18, 2022 was known to him prior to discovery in this action.[8] Further, there is no evidence indicating Defendant was not made aware of the proper termination date (although Defendant denies any knowledge now) from the Notice CP 523, sent during the week of June 14, 2021, that is "automatically generated by [the IRS's systems] and is mailed to the taxpayer's address on record." (Second Decl. Troichuk ¶¶ 7–10; ECF No. 33-4 at 19:6–18, 22:17–23:1.)

As a final point, it would belie common sense for Defendant to think the installment agreement remained in effect, despite his overt noncompliance. *See United States v. Hanks*, 569 F. App'x 785, 789 (11th Cir. 2014) (finding taxpayer "no longer believed that the [installment] agreement was in force" when the taxpayer "made only one voluntary payment towards the liabilities covered by the agreement"). Thus, for all these reasons, Defendant fails to create a

---

[8] As explained by Troichuk in her deposition, the July 18, 2022 date on the Form 4340 is actually the date the statute of limitations expired. (ECF No. 33-4 at 20:1–5, 24–24.)

genuine dispute of material fact supporting any inference that July 18, 2022 was the valid termination date.[9]

Even if the Court were to deem the Form 4340's July 18, 2022 termination date as raising a genuine dispute as to the 2020 Installment Agreement's termination date, it would, nevertheless have no *material* effect on the outcome. This is because, assuming *arguendo*, that this case was brought in violation of 26 U.S.C. § 6331, there is insufficient prejudice to Defendant to invalidate this action. In fact, Defendant's case-in-chief on this point, and the only case he cites in the entire Opposition Brief, indicates that Defendant "must demonstrate prejudice for the government's regulatory violation to invalidate [a] collection action." *Schiller*, 81 F.4th at 71 (citing *United States v. Caceres*, 440 U.S. 741, 753 (1979)). In *Schiller*, "[t]he government . . . concede[d] that it violated its regulations when it referred the matter prior to the formal rejection of the proposed installment agreement" in violation of 26 U.S.C. § 6331(k)(2)(A) and 26 C.F.R. § 301.6331-4(a)(1). 81 F.4th at 71. The Second Circuit, nevertheless, found that defendant's evidence of a "technical, non-prejudicial error on the part of the government" did not sufficiently make the required showing of prejudice. *Id.* at 71–72 (citations omitted).

Just as the Second Circuit found in *Schiller*, "Defendant[] ha[s] neither advanced any particular theory of prejudice nor established that [he] suffered any harm from the IRS's premature referral of this collection action." *See id.* at 71. First and foremost, there is no prejudice here because Defendant does not allege any prejudice. Further, while Defendant does not contest that he entered into the 2020 Installment Agreement, (P-SOF ¶ 41; D-RSOF ¶ 41), there is no evidence

---

[9] The Court also notes that Defendant's Answer contains no affirmative defense relating to 26 U.S.C. § 6331(k) or providing any other indication that this case is barred as premature. (*See* ECF No. 3.)

he complied with the terms of the agreement or made any payments pursuant to the same between August 8, 2021 and the commencement of this action 11 months later. (*See* ECF No. 32-6 at 1-3.)

Therefore, because the undisputed material facts do not support a July 18, 2022 termination date of the 2020 Installment Agreement, and further, because Defendant suffered no prejudice by the timing of this action, this suit is not barred by 26 U.S.C. § 6331.

### 2.     Issues with Plaintiff's Records

To support his second and third arguments, Defendant challenges the presumption of correctness by asserting that Plaintiff's "computer-generated business records" contain "numerous alarming systematic errors, computer glitches, user-errors and other anomalies [] which undermine the credibility of those records to the point of rendering them untrustworthy." (*Id.* at 1); *see also* Fed. R. Evid. 803(6)(E). Further, Defendant argues Plaintiff's business records, principally the Form 4340s, were not made at the appropriate time or by the appropriate person to be admissible under the business records exception to the rule against hearsay. *See* Fed. R. Evid. 803(6)(A). Plaintiff does not contest the existence of issues in the records but instead characterizes them as "inadvertent or inconsequential computer errors." (ECF No. 38 at 4.) Plaintiff contends that "[t]he errors that [Defendant] Boufarah points to on the pages of the transcripts are minor, relate to other issues, and do not create a genuine issue of material fact as to the assessments or the installment agreements." (*Id.* at 10.)

The Court recognizes the long-standing history of relying on the Government's tax records, including Form 4340s, under the presumption of correctness in similar contexts. *See U.S. v. Meyer*, 914 F.3d 592, 594 (8th Cir. 2019) ("There is 'substantial precedent' that Form 4340 is an 'appropriate source evidencing the IRS's assessment and notice of tax arrears.'") Defendant seeks to rebut the presumption of correctness by arguing Plaintiff's records are "inadmissible" under Federal Rules of Evidence ("Rule" or "Rules") 803(6)(A) and 803(6)(E) because they are

12

untrustworthy and "were not made at or near the time of the event being recorded." (ECF No. 33 at 3–6.) Plaintiff does not dispute that there are errors in its records, but instead chalks these errors up as "immaterial for purposes of summary judgment." (ECF No. 38 at 9.)

### a. Fed. R. Evid. 803(6)(A)

Defendant asserts that Plaintiff's business records are inadmissible under Rule 803(6)(A) because they "contain entries of events that were not made at or near the time of the event being recorded." (ECF No. 33 at 5–6.) Plaintiff refutes this argument by citing to case law indicating that the records are admissible "under the [T]hird [C]ircuit precedent and the [F]ederal [R]ules of [C]ivil [P]rocedure." (ECF No. 38 at 10.)

Federal Rule of Evidence 803(6)(A) provides that "records of regularly conducted activity" "are not excluded by the rule against hearsay" as long as "the record was made at or near the time by--or from information transmitted by--someone with knowledge." Fed. R. Evid. 803(6)(A). While the Third Circuit itself has not discussed this Rule in the context of tax records, district court decisions within the Circuit, and other circuit courts, have held that the records are admissible evidence. A litany of cases have found the records at issue admissible under the business records exception to the rule against hearsay pursuant to Rule 803(6). *See, e.g., U.S. v. Stevenson*, No. 09-3034, 2010 WL 2490756, at *3 (E.D. Pa. June 15, 2010) (collecting cases); *In re Garm*, 114 B.R. 414, 417 (Bankr. M.D. Pa. 1990) (finding Form 4340s fall under Rule 803(6) despite objections that the IRS revenue officer "was not present at the time the entries were made on the record nor . . . personally responsible for making the entries"); *U.S. v. Goodman*, 527 F. App'x 697, 699 (10th Cir. 2013) (finding the same admissible under both Rules 803(8) and 803(6)). Other courts have found the IRS records, including the Form 4340, admissible under the public records exception to the rule against hearsay pursuant to Rule 803(8). *See, e.g., U.S. v. Zarra*, 810 F. Supp. 2d 758, 764 (W.D. Pa. 2011), *aff'd*, 477 F. App'x 859 (3d Cir. 2012); *see also Katz v. U.S.*, No. 91-5623, 1992

13

WL 236273, at *3 (E.D. Pa. Sept. 9, 1992); *see also Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1058 (9th Cir. 2021); *U.S. v. Dickert*, 635 F. App'x 844, 850 (11th Cir. 2016).

Given the overwhelming authorities that have found the relevant IRS records admissible—both under Rule 803(6) and Rule 803(8)—and based on a lack of authority cited by Defendant to the contrary, the Court find that Rule 803(6)(A) does not bar the records at issue.[10]

### b. Fed R. Evid. 803(6)(E)

Defendant also seeks to rebut the presumption of correctness by arguing Plaintiff's records lack trustworthiness pursuant to Rule 803(6)(E) based on the existence of "systematic errors, input errors, computer glitches and confusing noncorrelations." (ECF No. 33 at 5.) Plaintiff argues errors identified by Defendant are "immaterial for purposes of summary judgment." (ECF No. 38 at 9–10.)

As noted above, records of regularly conducted activity are generally not excluded by the rule against hearsay. Fed R. Evid. 803(6)(E). While this exception may not be inapplicable when "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," "any question as to the *accuracy* of [business records], whether resulting from incorrect data entry or the operation of the computer program, . . . affects only the weight of the [records], not their admissibility." *Dicuio v. Brother Int'l Corp.*, No. 11-1447, 2015 WL 3403144, at *12 n. 10 (D.N.J. May 27, 2015), *aff'd*, 653 F. App'x 109 (3d Cir. 2016) (emphasis added). Importantly here, District courts are afforded "great latitude on the issue of trustworthiness." *Smith*, 804 F.3d at 729 (citation omitted).

---

[10] Further, "as a general rule, a court will not look behind the IRS assessment determination even though it may be based on hearsay or other evidence inadmissible at trial." *Xenakis v. U.S. Dep't of Treasury*, I.R.S., 281 B.R. 585, 592 (W.D. Pa. 2001) (citing *Anastasato v. Commissioner*, 794 F.2d 884, 886 (3d Cir.1986)) (internal quotation omitted).

Defendant argues that the Form 4340 and other records lacks trustworthiness by pointing to a myriad of its issues, including (i) "systematic error" resulting in an absence of an installment agreement termination code; (ii) "erroneously inputted" pending installment agreement code; (iii) "systematic error" resulting in write offs of account balances; and (iv) a "date [] inputted incorrectly in [the IRS system]." (ECF No. 33 (quoting P-SOF ¶¶ 44–47).)

Defendant, in identifying errors in Plaintiff's records, makes no attempt to refute that he has substantial and longstanding unpaid taxes. In fact, Defendant's brief is devoid of any arguments, assertions, or evidence that the taxes were paid or that taxes are not otherwise due.[11] As such, the errors and irregularities in the records do nothing to create a genuine issue of material fact on whether Defendant is liable for unpaid taxes, or otherwise overcome the presumption of correctness. Therefore, the Court first finds in favor of Plaintiff as to liability.

Outside of Defendant's general attacks on the trustworthiness of Plaintiff's records, Defendant points to only one type of arithmetic error, wherein, Plaintiff purportedly incorrectly calculates his income tax liabilities for the tax years at issue. Taking tax year 2009 as an example, Plaintiff states in its Statement of Facts that "Boufarah self-reported his 2009 federal income tax liability [as] $194,960." (P-SOF ¶ 9.) Defendant responds "Disputed. The amount of Defendant's income tax liability shown on his 2009 return was $115,752, not $194,960." (D-RSOF ¶ 9.) In fact, both numbers appear on Defendant's tax return. (*See* ECF No. 32-12 at 2.) Plaintiff's number, $194,690, appears in the line "Total Tax." (*See id.*) Defendant's number, $115,752, appears in the line "Amount You Owe." (*See id.*) Ultimately, when calculating the amount owed and due from Defendant, Plaintiff correctly uses Defendant's number, the "Amount You Owe." (*See* ECF No.

---

[11] As discussed in Section III.B.1, the Court found Defendant's only argument that the suit is barred, on prematurity grounds under 26 U.S.C. § 6331, is unavailing.

38 at 11.) Thus, this dispute is nothing more than a red herring as it has no effect on Plaintiff's calculation of damages. There is no genuine dispute here.

While it is axiomatic that any errors are not optimal, Defendant does not argue why the errors, glitches, and similar issues in Plaintiff's records rebut the presumption of correctness as to the amount owed. *See United States v. Freas*, No. 99-2665, 2002 WL 1310279, at *4 (D.N.J. May 16, 2002) ("Unless the defendant places into the record evidence of an error in the computation, the defendant will not survive a motion for summary judgment." (citation omitted)). In light of significant authority indicating similar minor errors in government tax records are insufficient to defeat summary judgment, any contention to the contrary must fail. *See U.S. v. White*, 466 F.3d 1241, 1249 (11th Cir. 2006) (finding insignificant errors that "do not address the issue of whether the IRS has miscalculated the amount that it claims [defendant] owes" do not defeat summary judgment for the government plaintiff); *see also U.S. v. Faro*, No. 20-769, 2024 WL 3638012, at *3 (M.D. Fla. Aug. 1, 2024) (entering judgment for the government plaintiff notwithstanding an errant final balance where the defendant failed to prove that the amount of the assessment is erroneous); *I.R.S. v. Koff*, No. 00-1954, 2002 WL 1004744, at *4 (E.D. Cal. Mar. 18, 2002) (finding "accidental or unintended processing error[s]" are insufficient to "raise a genuine issue of material fact" to defeat summary judgment); *Intersport Fashions W., Inc. v. United States*, 84 Fed. Cl. 454, 462 (2008) (same).

There is also no evidence here that Defendant was misled or prejudiced in any specific way by errors in Plaintiff's records. *Cf. Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 176 (3d Cir. 1978) ("A notice of a deficiency, even if it contains error, may nonetheless be valid where the taxpayer has not been misled as to the proper year involved or the amounts in controversy."); *see also Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1187 (S.D.N.Y. 1970) (finding

government party is not bound by administrative error "at least in the absence of any showing of prejudice to the taxpayer"); *see United States v. Cook*, No. 02-09475, 2004 WL 690804, at *10 (E.D. Pa. Mar. 22, 2004) (same). Defendant makes a generalized attack based on a myriad of errors that do not materially relate to the calculation of the assessment. This type of attack is insufficient to raise the type of issue necessary to defeat summary judgment. *See, e.g., United States v. Wall*, No. 05-05935, 2007 WL 2916480, at *3 (D.N.J. Oct. 5, 2007) (granting government's summary judgment because defendant failed to rebut presumption of correctness attached to the assessments because their attacks were not "substantive challenge[s] to the correctness or validity of the assessments").

Accordingly, Defendant has not raised a genuine issue of material fact as to liability or the assessment calculation, and thus the Court grants summary judgment in favor of Plaintiff United States.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (ECF No. 32) is hereby **GRANTED**. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: December 11, 2024